Filed 10/21/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.H., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.H., <br><br> Defendant and Appellant. | F084002 <br><br> (Super. Ct. No. JD141757-00) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION AND SUMMARY**

M.H. (Father) and A.C. (Mother) are the parents of K.H., now 20 months old. Due to his parents' drug use, K.H. was taken into protective custody following his birth and made a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivision (b)(1).[1] The juvenile court subsequently terminated Mother's and Father's parental rights under section 366.26,[2] and Father timely appealed. Mother is not a party to the appeal.

The sole claim advanced by Father is the alleged violation of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.[3] Father contends Kern County Department of Human Services (the Department) and the juvenile court failed to comply with their affirmative and continuing duties of inquiry under section 224.2, subdivision (a), the Department failed to comply with its broad duty of inquiry set forth under section 224.2, subdivision (b), and remand for an adequate inquiry is required.[4] The Department does not dispute the inquiry, which extended no further than Mother and Father, was inadequate under section 224.2, subdivision (b), but argues the juvenile court's finding that ICWA does not apply, made pursuant to section 224.2, subdivision (i)(2), is supported by substantial evidence and any error is harmless because "the record contains [no] information suggesting a reason to believe that [K.H.] may be an 'Indian child' within the meaning of ICWA, such that the absence

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] Section 366.26 was amended by Assembly Bill No. 2711 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to the issue raised on appeal.

[3] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[4] Section 224.2, subdivision (k), was amended by Assembly Bill No. 2960 (2021–2022 Reg. Sess.). This amendment, effective January 1, 2023, is not relevant to our discussion in this case.

of further inquiry was prejudicial to the juvenile court's ICWA finding." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779–782 (*Dezi C.*), review granted Sept. 21, 2022, S275578.) Recently, the California Supreme Court granted review in *Dezi C.* and we anticipate further clarification on this issue. Until such time, we conclude that the court's ICWA finding is not supported by substantial evidence and it abused its discretion in concluding otherwise. Given the remedial purpose underlying ICWA and related California law intended to protect third party rights, we apply the analytical framework set forth by the California Supreme Court in *A.R.* for assessing harm and we conclude the error is prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252–254 (*A.R.*).)

As discussed herein, ICWA applies to federally recognized Indian tribes (25 U.S.C. § 1903(8); *In re Ricky R.* (2022) 82 Cal.App.5th 671, 681, fn. 2 (*Ricky R.*)), and provides "a right to intervene in or exercise jurisdiction over the proceeding" (*In re K.T.* (2022) 76 Cal.App.5th 732, 741, citing 25 U.S.C. § 1911; accord, *In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*). "Notice to Indian tribes is central to effectuating ICWA's purpose …." (*In re T.G.* (2020) 58 Cal.App.5th 275, 288 (*T.G.*), citing *Isaiah W., supra*, at p. 8.) However, it is typically "not self-evident whether a child is an Indian child" (*Benjamin M., supra*, 70 Cal.App.5th at p. 741), and "the question of membership is determined by the tribes, not the courts or child protective agencies" (*T.G., supra*, at p. 294). To ensure notice in cases in which it is known or there is reason to know an Indian child is involved (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a)), the law imposes an affirmative and ongoing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child (§ 224.2, subd. (a)).

Due to changes in California law over the past few years, agencies now have a broader duty of inquiry and a duty of documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)),[5] and dependency cases have begun to reach the appellate courts

---

[5] All further references to rules are to the California Rules of Court.

3.

following these changes, often after the passage of much time and the termination of parental rights.  Courts have been tasked with determining how to assess error when the agency fails to discharge its now-broad duty of inquiry and, particularly as of late, how to assess whether that error is prejudicial in view of our state constitutional miscarriage of justice requirement.  Given that the appellant is usually a parent who may raise the issue for the first time on appeal, but ICWA is a remedial statute designed to protect the rights of a stakeholder other than the parent or the child, this assessment has not proven simple or straightforward.  Agencies have often conceded error and, therefore, disposition of the issue on appeal has turned on whether the error was prejudicial.  Although reviewing courts generally agree that reversal is dependent on showing prejudice, or a miscarriage of justice, approaches for assessing prejudice have varied.  (E.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698 (*E.V.*); *Dezi C., supra*, 79 Cal.App.5th at p. 779, review granted; *In re J.C.* (2022) 77 Cal.App.5th 70, 80 (*J.C.*); *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 (*A.C.*); *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)  The separate concepts of error, standard of review, and prejudice, however, are so closely related in this context that they lend themselves to conflation.  In our view, a more precise delineation of the degree of error and the appropriate standard of review assists in clarifying why, viewed through the lens of *A.R.*, undeveloped records often result in prejudicial error necessitating reversal for correction.

The juvenile court may find that ICWA does not apply to a proceeding if it determines "that proper and adequate further inquiry and due diligence as required … have been conducted and there is no reason to know whether the child is an Indian child .…"  (§ 224.2, subd. (i)(2).)  The court's finding in this regard is reviewed for substantial evidence (*ibid.*), but we agree with the Court of Appeal in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005 (*Ezequiel G.*) that, consistent with the reasoning in *In re Caden C.* (2021) 11 Cal.5th 614, 639–640 (*Caden C.*), the determination that the

4.

agency's inquiry was proper, adequate, and duly diligent should be reviewed under a hybrid substantial evidence and abuse of discretion standard.

This hybrid standard better reflects the need for the juvenile court to engage in a balancing of factors and to exercise sound discretion in making the relevant determinations. Not every error by an agency in discharging its duties under section 224.2, subdivision (b), will undermine the court's ICWA finding under section 224.2, subdivision (i)(2), but the court's ability to exercise discretion in this regard is dependent on adequate record development by the agency. On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes. When, as in this case, the court's implied finding that the agency's inquiry was proper, adequate, and duly diligent rests on a cursory record and a patently insufficient inquiry that is conceded, the only viable conclusion is that the finding is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion.

As stated, neither the juvenile court nor the agency makes a determination on the merits regarding whether a child is an Indian child; that matter rests within the sole province of Indian tribes. The only protection the collective statutes afford is notice to relevant tribes so that they may determine a child's status in accordance with their particular customs and procedures and decide whether to intervene. Therefore, ensuring a proper, adequate, and duly diligent inquiry at the initial stage of the compliance process is foundational to fulfilling the purpose underlying ICWA and related California law. Ensuring the record is reasonably developed on this matter, in turn, is critical to an accurate determination by the court as to whether further inquiry or notice, which is the means by which the interests of Indian tribes and Indian children are protected in dependency proceedings, is required. Most children will not be found to be Indian

children, but that is not the measure and, again, that determination is not made by the agency or the court.

Not every error by the agency will render the juvenile court's finding that ICWA does not apply infirm, as stated. However, the less developed the juvenile court record is by virtue of the failure to ensure an adequate inquiry, the greater the degree of error. Until and unless the duty of inquiry is viewed in the context of ICWA's remedial purpose; reasonable compliance with the inquiry requirements at the first stage is ensured; and the agency's efforts are documented in the record, reviewing courts will continue to confront ICWA findings that are unsupported by substantial evidence and constitute an abuse of discretion.

The resulting finding of prejudice does not follow from disregarding the constitutional miscarriage of justice requirement or from treating the error as reversible per se. Rather, under California law, we generally measure prejudice by asking whether "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) However, not every error under state law is amenable to assessment under *Watson*'s usual likelihood-of-success test. (*A.R.*, *supra*, 11 Cal.5th at p. 252.) This is because in some instances, the relevant injury is not related to a specific substantive outcome on the merits and placing the measure for prejudice on such an outcome falls short of meaningfully safeguarding the rights at issue. (*Id.* at pp. 252–254.) As explained in *A.R.*, which involved a parent's claim of ineffective assistance of counsel arising from the failure to file a timely appeal, "[f]or a parent whose attorney has incompetently failed to file a timely appeal, the relevant injury is not denial of any specific substantive appellate victory; *it is the opportunity to appeal at all*" (*id.* at p. 252, italics added), and "reinstating an otherwise-defaulted appeal is generally the only meaningful way to safeguard the statutory right to competent representation" (*id.* at p. 254).

Similarly, the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this first step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature.[6] (*A.R., supra*, 11 Cal.5th at pp. 252–253.)

In this case, the Department's inquiry and documentation fell well short of what is required under California law, as it concedes. (§ 224.2, subd. (b); rule 5.481(a)(5).) As a result of the failure to develop the record beyond questioning Mother and Father, the juvenile court's implied finding of a proper, adequate, and duly diligent inquiry is unsupported by substantial evidence and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).) Drawing on the reasoning in *A.R.*, the error is prejudicial because neither the agency nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. (*A.R., supra*, 11 Cal.5th at pp. 252–254.) Accordingly, we conditionally reverse the

---

[6]  We are cognizant of the concern expressed over the breadth of the duty of inquiry and the burden imposed on agencies and juvenile courts given that few children will ultimately be members of or eligible for membership in a federally recognized tribe. This concern, however, must be directed to policymakers; "'[c]ourts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature.'" (*In re J.C.* (2017) 13 Cal.App.5th 1201, 1207, quoting *Estate of Horman* (1971) 5 Cal.3d 62, 77.)

juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein.

## FACTUAL AND PROCEDURAL SUMMARY[7]

### I.    Petition and Detention

On February 21, 2021, the Department received an immediate referral from Mercy Hospital Southwest after K.H. was born, due to Mother testing positive for heroin and opiates.  On February 23, 2021, the Department filed an original petition on behalf of K.H. alleging he came within the juvenile court's jurisdiction under section 300, subdivision (b)(1) (failure to protect), due to Mother's untreated substance abuse.  Father was identified as K.H.'s alleged father.  The petition and attached social study alleged that Mother admitted using heroin two hours prior to K.H.'s birth and in the hospital restroom after his birth, and that Father was also a heroin user who was escorted out of the hospital after drug paraphernalia was found in the restroom.

On February 24, 2021, the juvenile court held a detention hearing.  Mother and Father were present, and they denied the petition allegations.  Mother and Father were not married but were in a five years' long, intact relationship.  Based on Mother's testimony, the court elevated Father's status from alleged to presumed father.  With respect to ICWA, Mother signed a "PARENTAL NOTIFICATION OF INDIAN STATUS" form (Judicial Council form ICWA-020 (ICWA 020)) denying that she is or may be eligible for membership in a federally recognized Indian tribe.  She testified to the same.

Father signed an ICWA-020 form stating that he is or may be eligible for membership in a federally recognized Indian tribe, but wrote "unknown" for name and location.  He testified he was unsure if he had Indian ancestry because he did not know very much about his family's heritage.  However, he did not think anyone had mentioned

---

[7]    Because error under ICWA is the only claim raised on appeal, we confine the facts to those relevant to that issue or helpful for clarity.

Indian ancestry and he did not hear any conversations about it; and as far as he was aware, no family members ever lived on a reservation, were eligible for tribal membership, were enrolled in a tribe, or received benefits.

The juvenile court advised Mother and Father that if they obtained any information they might belong to an American Indian or Eskimo tribe, they should let their social workers and the court know so a further inquiry could be done. The court found that ICWA did not apply, found a prima facie showing that K.H. came within section 300, and ordered K.H. detained from Mother. The court ordered supervised visitation for Mother and Father twice per week.

## II.    Jurisdiction and Disposition

On April 7, 2021, the juvenile court held a combined jurisdiction and disposition hearing. The jurisdiction and disposition social studies reflected the court's finding at the detention hearing that ICWA did not apply, and the disposition social study reflected that there had been no further inquiries on the issue of ICWA. Mother and Father waived their rights and submitted on the allegations in the petition. The court adopted the Department's recommendations, sustained the petition allegations, and adjudged K.H. a dependent of the court.

Mother and Father also submitted on the disposition social study. The court ordered K.H. removed from Mother's and Father's physical custody, and ordered family reunification services and two-hour bi-weekly supervised visitation. The court also ordered Mother and Father to participate in counseling for parenting and substance abuse, and to submit to random drug and alcohol testing.

## III.   Six-month Review Hearing

On October 20, 2021, the juvenile court held a six-month review hearing. The Department's social study reflected minimal progress by Mother and Father. They had not made acceptable efforts to avail themselves of the services provided to facilitate K.H.'s return to their care, had numerous positive and presumptively positive drug tests,

9.

displayed symptoms of drug intoxication during several supervised visits with K.H., and failed to enroll in substance abuse counseling.

Between May 27, 2021, and June 30, 2021, K.H. was placed with C.H., his paternal grandfather. However, on June 30, 2021, Mother and Father were arrested after police responded to a shoplifting report involving Mother. Mother was under the influence of a controlled substance and had narcotics on her. Father was in the parking lot with K.H. K.H. was detained, removed from his placement with C.H., and returned to his prior Resource Family Home (RFH) placement.

The Department's social study reflected the court's prior finding that ICWA did not apply and that no new information had been received. The Department recommended the court terminate services and set a selection and implementation hearing under section 366.26. Mother and Father objected, but offered no evidence.

The court adopted the recommendations and set a section 366.26 hearing.

## IV. Section 366.26 Hearing

On February 17, 2022, the court held a section 366.26 hearing. The Department's social study reflected that K.H. had been with the same RFH caregivers following his release from the hospital on February 23, 2021, to the present, with the exception of the two-month placement with C.H. and the emergency placement that followed his removal from C.H.'s home. K.H.'s RFH caregivers expressed interest in adopting K.H., and the Department recommended the court terminate Mother's and Father's parental rights and select a permanent plan of adoption for K.H.

The social study reflected no new information under ICWA.

Mother and Father objected, but offered no evidence.

The court adopted the Department's recommendations, terminated Mother's and Father's parental rights, and selected a permanent plan of adoption for K.H.

Father's counsel filed a timely notice of appeal.

## DISCUSSION

### I. ICWA

#### A. Background

"ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation" (*In re W.B.* (2012) 55 Cal.4th 30, 48 (*W.B.*), citing 25 U.S.C. § 1911(b)–(c) & *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 36 (*Holyfield*)), in furtherance of "federal policy '"that, where possible, an Indian child should remain in the Indian community"'" (*W.B.*, *supra*, at p. 48, quoting *Holyfield, supra*, at p. 37).[8] "ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families" (*In re H.A.* (2002) 103 Cal.App.4th 1206, 1210; accord, *In re Desiree F.* (2000) 83 Cal.App.4th 460, 469; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421), and "[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding" (*In re K.T.*, *supra*, 76 Cal.App.5th at p. 741, citing 25 U.S.C. § 1911; accord, *Isaiah W., supra*, 1 Cal.5th at p. 8).

The concerns underlying Congress's enactment of ICWA in 1978 have been summarized in countless cases over the more than four decades that have since passed. ICWA was enacted "in response to 'rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*Isaiah W., supra*, 1 Cal.5th at p. 7, quoting *Holyfield, supra*, 490 U.S. at

---

[8] On February 28, 2022, the United States Supreme Court granted petitions for writ of certiorari in cases Nos. 21-376, 21-377, 21-378, and 21-380, and consolidated the cases in *Brackeen v. Haaland* (Feb. 28, 2022, No. 21-376) (142 S.Ct. 1205). The case presents numerous constitutional challenges to ICWA. Oral argument is scheduled for November 9, 2022.

11.

p. 32.)  "ICWA declared that 'it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture .…'" (*Isaiah W., supra*, at pp. 7–8, quoting 25 U.S.C. § 1902.)  As stated by the United States Supreme Court in *Holyfield*, in enacting ICWA, "Congress was concerned with the rights of Indian families and Indian communities vis-à-vis state authorities.  More specifically, its purpose was, in part, to make clear that in certain situations the state courts did *not* have jurisdiction over child custody proceedings.  Indeed, the congressional findings that are a part of the statute demonstrate that Congress perceived *the States and their courts* as partly responsible for the problem it intended to correct."  (*Holyfield, supra*, at p. 45, fn. omitted, italics added.)

"In 2006, California adopted various procedural and substantive provisions of ICWA."  (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*), citing *In re Autumn K.* (2013) 221 Cal.App.4th 674, 703–704; accord, *W.B., supra*, 55 Cal.4th at p. 52; *T.G., supra*, 58 Cal.App.5th at pp. 289–290.)  The Legislature's "primary objective … was to *increase* compliance with ICWA.  California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem.  (Sen. Judiciary Com., Analysis of Sen. Bill No. 678 (2005–2006 Reg. Sess.) as amended Aug. 22, 2005, p. 6.)" (*W.B., supra*, at p. 52, italics added; accord, *In re Michael V.* (2016) 3 Cal.App.5th 225, 231–232, fn. 4.)

"In 2016, new federal regulations were adopted concerning ICWA compliance. (81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019).)  Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice

and inquiry requirements.  (Assem. Bill No. 3176 (2017–2018 Reg. Sess.); *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3.)  Those changes became effective January 1, 2019 .…" (*D.S., supra*, 46 Cal.App.5th at p. 1048, fn. omitted.)  Subsequently, the Legislature amended section 224.2, subdivision (e), to define "reason to believe," effective September 18, 2020.  (*T.G., supra*, 58 Cal.App.5th at p. 290, fn. 14, citing Assem. Bill No. 2944 (2019–2020 Reg. Sess.) ch. 104, § 15, pp. 24–25.)[9]

B.     **Summary of Duties of Inquiry and Notice Under ICWA**

Within the meaning of ICWA, federal and state law define an "'Indian child' [as] any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a).)  In addition, state law provides, "As used in connection with an Indian child custody proceeding, the term 'Indian child' also means an unmarried person who is 18 years of age or over, but under 21 years of age, who is a member of an Indian tribe or eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe, and who is under the jurisdiction of the dependency court, unless that person or their attorney elects not to be considered an Indian child for purposes of the Indian child custody proceeding.  All Indian child custody proceedings involving persons 18 years of age and older shall be conducted in a manner that respects the person's status as a legal adult." (§ 224.1, subd. (b).)

---

[9]     In light of the amendments to section 224.2 by Assembly Bill No. 3176 (2017–2018 Reg. Sess.) and Assembly Bill No. 2944 (2019–2020 Reg. Sess.), and the amendment to rule 5.481, some older cases may be of limited assistance in answering the question presented here and, in particular, we find reliance on older cases as authority for approving only the most cursory of initial inquiries, without documentation in the record, or for shifting the burden of proof to the parent, misplaced.  (E.g., *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 ["The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis.  In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal."]; see *A.C., supra*, 65 Cal.App.5th at pp. 1074–1078 (dis. opn. of Menetrez, J.) [addressing reliance on *In re Rebecca R.* in maj. opn.].)

As previously stated, whether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination. (*T.G., supra*, 58 Cal.App.5th at p. 294; accord, *In re Rylei S.* (2022) 81 Cal.App.5th 309, 321, fn. 8 (*Rylei S.*).) "'Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.'" (*Ricky R., supra*, 82 Cal.App.5th at p. 678, quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 741.) Under California law, "[j]uvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a child for whom a section 300 petition has been filed is or may be an Indian child." (*In re N.G.* (2018) 27 Cal.App.5th 474, 481 (*N.G.*), citing § 224.3, subd. (a); accord, *T.G., supra*, at p. 290; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) As many courts have recognized, "[t]he ICWA investigatory process under state law is now expansive and potentially onerous." (*In re S.H.* (2022) 82 Cal.App.5th 166, 174.)

"The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re T.G., supra*, 58 Cal.App.5th at p. 290.) ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); [Welf. & Inst. Code,] § 224.3, subd. (a).) Notice enables the tribes 'to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.' (*In re T.G., supra*, 58 Cal.App.5th at p. 288.)" (*Ricky R., supra*, 82 Cal.App.5th at p. 678.)[10]

---

**10** Courts have recognized it is somewhat inaccurate to refer to the agency's "'"initial duty of inquiry"'" (*Rylei S., supra*, 81 Cal.App.5th at p. 319) because the duty "'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings" (*J.C., supra*, 77 Cal.App.5th at p. 77). However, in this case, like many others, an ICWA inquiry was made only of the parents and after the juvenile court found ICWA did not apply at the detention hearing, no further information was gathered. Given that our discussion on error and prejudice focuses on the first step of the inquiry and does not involve the duty of further inquiry or notice, we use the term duty of initial inquiry.

"The duty of initial inquiry applies in every dependency proceeding. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 88[3]–88[4] (*Austin J.*).) Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).) State law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).) In addition, when [it] takes a child into temporary custody, the agency must ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child,' and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. (§ 224.2, subd. (e), 1st par.) '[R]eason to believe' exists whenever the court or [the agency] has 'information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.' (§ 224.2, subd. (e)(1).) The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subd. (e)(2)(A)–(C).)

"The duty to provide notice arises only if [the agency] or the court 'knows or has reason to know that an Indian child is involved.' (25 U.S.C. § 1912(a); § 224.3, subd. (a); *Austin J., supra*, 47 Cal.App.5th at pp. 883–884.) Federal regulations define

15.

the grounds for reason to know that an Indian child is involved. (25 C.F.R. § 23.107(c)(1)–(6).) State law conforms to that definition. (§ 224.2, subd. (d)(1)–(6).)" (*Ricky R., supra*, 82 Cal.App.5th at pp. 678–679.)

## II.    Errors With Initial Inquiry and Finding ICWA Does Not Apply

### A.    Procedural History

#### 1.    Juvenile Court's Finding

As stated, at the first appearance in court of each party, the juvenile court has a duty to "ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) The court may find that ICWA does not apply to a proceeding, if it finds "that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child …." (§ 224.2, subd. (i)(2).)

In accordance with its duties, the court questioned Mother and Father at the detention hearing three days after K.H.'s birth. Mother denied having any Indian ancestry in an ICWA-020 form and during her testimony. Father indicated on his ICWA-020 form that he may have Indian ancestry, although he was unsure what tribe. During his testimony, he said he was uncertain if he had any Indian ancestry because he did not know much about his family's history, but he had no knowledge of any family living on a reservation, being enrolled in or eligible for tribal membership, or receiving any benefit. The court advised Mother and Father to update their social workers and the court if, at any time during the proceedings, they obtained any information they might be members of a tribe, and the court found that ICWA did not apply. (§ 224.2, subds. (c), (i)(2).)

## 2.    The Department's Inquiry

Although the court and the Department both have an affirmative and continuing duty to inquire that begins with initial contact (§ 224.2, subd. (a)), the Department also has the following duty, at issue in this case:  "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (*Id.,* subd. (b).)  "'[E]xtended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ["As used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act."].)

Additionally, the California Rules of Court, which "'have the force of statute to the extent that they are not inconsistent with legislative enactments and constitutional provisions'" (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011, quoting *In re Richard S.* (1991) 54 Cal.3d 857, 863), impose a documentation requirement on the Department.  Effective January 1, 2020, rule 5.481(a)(5), provides, "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant

17.

tribes. Whenever new information is received, that information must be expeditiously provided to the tribes."

The record reflects that the Department was in contact with maternal grandmother E.C. and paternal grandfather C.H. prior to the detention hearing, and that K.H. was later placed with C.H. for a two-month period in May and June 2021. The disposition social study documents Mother's identification of her parents, both of whom lived in California, by name and location. Mother reported good communication with E.C., minimal communication with maternal grandfather J.J., and one sibling.

Father also identified his parents, both of whom lived in California, by name and location. The record reflects that Father was in communication with C.H., and the disposition social study documents good communication with paternal grandmother S.H. Father reported one sibling.

In compliance with section 309, subdivision (e)(1), the Department identified 11 maternal relatives and located eight of them; identified eight paternal relatives and located seven of them; and sent notices to the relatives it located on two dates, March 3, 2021, and March 10, 2021.[11] In addition, Father was in contact with S.H. over video chat during two supervised visits with K.H., two months apart.

---

[11] Section 309, subdivision (e)(1), provides, in relevant part: "If the child is removed, the social worker shall conduct, within 30 days, an investigation in order to identify and locate all grandparents, parents of a sibling of the child, if the parent has legal custody of the sibling, adult siblings, other adult relatives of the child, as defined in paragraph (2) of subdivision (h) of Section 319, including any other adult relatives suggested by the parents, and, if it is known or there is reason to know the child is an Indian child, any extended family members as defined in Section 224.1 and Section 1903 of the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.). As used in this section, 'sibling' means a person related to the identified child by blood, adoption, or affinity through a common legal or biological parent. The social worker shall provide to all adult relatives who are located, except when that relative's history of family or domestic violence makes notification inappropriate, within 30 days of removal of the child, written notification and shall also, whenever appropriate, provide oral notification, in person or by telephone" notice of the child's removal from custody and explanation of options for care and placement of the child and support for the child's family. (§ 309, subd. (e).) Section 309 was amended, effective January 1, 2022, but the only change to subdivision (e)(1) was technical.

Notwithstanding the requirements under section 224.2, subdivision (b), and rule 5.481(a)(5), after the juvenile court found that ICWA did not apply at the detention hearing, the Department's social studies expressly reflect there were no additional inquiries or information regarding ICWA compliance. The record is also silent regarding whether the Department asked any of the 15 relatives it located in compliance with section 309, subdivision (e)(1), whether K.H. is or may be an Indian child, and, if so, what responses were received.

## B.       Applicable Standard of Review

Before turning to the errors at issue, we must resolve the standard of review because it informs review of the juvenile court's ICWA finding. In *Ezequiel G., supra*, 81 Cal.App.5th at pages 1004–1005, the Court of Appeal followed the California Supreme Court's reasoning in *Caden C., supra*, 11 Cal.5th at pages 639–640 and concluded that the juvenile court's finding of a "proper and adequate further inquiry and due diligence" under section 224.2, subdivision (i)(2), is properly reviewed under a hybrid substantial evidence and abuse of discretion standard. We agree.

The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) The court must find there is "no reason to know whether the child is an Indian child," which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply. (§ 224.2, subd. (i)(2).) This inquiry is essentially factual and, therefore, is reviewed for substantial evidence. (*Ezequiel G., supra*, 81 Cal.App.5th at p. 1004, citing *Caden C., supra*, 11 Cal.5th at pp. 639–640;

(See Legis. Counsel's Dig., Sen. Bill No. 354, Stats. 2021 (2021–2022 Reg. Sess.) ch. 687, § 6, pp. 40–42.) More recently, section 309 was amended by Senate Bill No. 384 (2021–2022 Reg. Sess.), effective January 1, 2023. The amendment pertains to practices for family finding and is not directly relevant to our resolution of the issue on appeal. However, the adoption and implementation of practices for family finding made in accordance with Senate Bill No. 384 may be of assistance to agencies in the discharge of their duties of inquiry under ICWA, discussed *post*.

accord, *In re J.K.* (2022) 83 Cal.App.5th 498, 504; *D.S., supra*, 46 Cal.App.5th at p. 1051.) Under this standard, "a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.'" (*Caden C., supra*, at p. 640; accord, *Ezequiel G., supra*, at p. 1004.) The standard recognizes that "[t]rial courts 'generally are in a better position to evaluate and weigh the evidence' than appellate courts" (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 883), and "an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record" (*ibid.*). "[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer." (*Ibid.*)

The juvenile court must also find a "proper and adequate further inquiry and due diligence .…" (§ 224.2, subd. (i)(2).) While we review the court's factual findings on the second element for substantial evidence as well, we agree with *Ezequiel G.* that, consistent with the reasoning in *Caden C.*, a hybrid standard of review is appropriate. (*Ezequiel G., supra*, 81 Cal.App.5th at pp. 1004–1005.) The inquiry is ultimately discretionary because it requires the juvenile court to "engage in a delicate balancing of" various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence. (*Caden C., supra*, 11 Cal.5th at p. 640; accord, *Ezequiel G., supra*, at pp. 1004–1005.)

"Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when ""'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.'"" [Citation.] But ""'[w]hen two or more inferences can reasonably be deduced from the

facts, the reviewing court has no authority to substitute its decision for that of the trial court'"'" [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced." (*Caden C., supra*, 11 Cal.5th at p. 641.)

Review of the juvenile court's findings under the foregoing standards is deferential, but "'[a]n appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law.'" (*People v. Vivar* (2021) 11 Cal.5th 510, 527, quoting *In re George T.* (2004) 33 Cal.4th 620, 634.) Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied. (*In re J.K., supra*, 83 Cal.App.5th at p. 504, citing *In re J.L.* (2017) 10 Cal.App.5th 913, 918; accord, *D.S., supra*, 46 Cal.App.5th at p. 1051; *In re Michael V., supra*, 3 Cal.App.5th at p. 235, fn. 5); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254; see *People v. Ault* (2004) 33 Cal.4th 1250, 1266 ["[I]ndependent appellate review of a mixed law and fact question is crucial when an excessively deferential appellate affirmance risks error in the *final determination* of a party's rights, either as to the entire case, or on a significant issue in the litigation."].) In this case, because we are confronted with an undeveloped record, the outcome is the same irrespective of the standards of review applied.

### C.    Evaluating Errors by Agency and Court

Given the nature of the deficiencies in this case, we are not required, nor do we attempt, to identify a baseline that must be met to demonstrate an adequate and proper inquiry with due diligence under section 224.2, subdivisions (b) and (i)(2). However, in general, remedial statutes are to be construed broadly to accomplish their purpose (*Pulliam v. HNL Automotive Inc.* (2022) 13 Cal.5th 127, 137), and the agency's duty of inquiry as framed by the express terms of section 224.2, subdivision (b), is quite broad

(*S.H., supra*, 82 Cal.App.5th at p. 174).[12]  This has driven recognition of and concern over the potential for seemingly endless initial inquiries.  (E.g., *In re E.L.* (2022) 82 Cal.App.5th 597, 607 ["To what extent are social workers required to comb the nether reaches of the land to find relatives who may shed light on a child's possible Indian heritage?"]; *Dezi C., supra*, 79 Cal.App.5th at p. 785, review granted ["[B]ecause section 224.2 creates an open-ended universe of stones, the rule ostensibly empowers the party to obtain a remand to question extended family members, then a second remand to question the family babysitter, and then a third remand to question long-time neighbors, and so on and so on."].)

In *Ezequiel G.*, the court observed that "complying with the literal language of the statute—that is, making an *initial* and *further* ICWA inquiry of every member of a child's extended family, including first and second cousins, plus every other person who has an interest in the child—is absurd at best and impossible at worst.  In some cases, parents refuse to provide [the agency] with any relative information, making contact with extended family impossible.  In other cases, parents provide [the agency] with partial information—a relative's name and the city where they were last known to have lived, for example, or a phone number that is no longer in service—making it extremely difficult for [the agency] to contact the relative, if it is able to do so at all.  And in yet other cases, a parent's extended family is so large that contacting every person identified in the statute would be neither practical nor useful.  [¶]  In short, given the statute's expansive language and the vagaries of the extended family information parents are

---

[12]     Under the well-established standard, a reviewing court's "fundamental task is to determine the Legislature's intent and give effect to the law's purpose (*In re D.B.* (2014) 58 Cal.4th 941, 945, citing *In re Greg F.* (2012) 55 Cal.4th 393, 406).  A "statute's words ""… generally provide the most reliable indicator of legislative intent""" (*In re D.B., supra*, at p. 945), and ""[i]f the statutory language is clear and unambiguous[, the] inquiry ends'" (*ibid.*), absent absurd consequences (*id.* at p. 946).

willing or able to provide, determining compliance with ICWA requires a significant exercise of discretion." (*Ezequiel G., supra*, 81 Cal.App.5th at p. 1006.)

We agree that an agency's broad duty of inquiry under section 224.2, subdivision (b), could arguably lend itself to an absurd interpretation, but we do not anticipate this particular aspect presenting an insurmountable hurdle for two reasons. First, statutes are interpreted to "'avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend.'" (*In re Greg F., supra*, 55 Cal.4th at p. 406.) Therefore, requiring an adequate initial inquiry be conducted and documented in the record should not translate into an exhaustive inquiry to ensure "[no] stone is left unturned." (*Dezi C., supra*, 79 Cal.App.5th at p. 785, review granted.) Such an extreme approach would be both absurd and unnecessary, as generally, "[u]nless the intent of a statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test." (*County of Tulare v. Campbell* (1996) 50 Cal.App.4th 847, 853; accord, *In re A.V.* (2017) 11 Cal.App.5th 697, 705; *People v. Carroll* (2014) 222 Cal.App.4th 1406, 1421.)

Second, so long as the agency conducts a reasonable inquiry and documents its results, the juvenile court will have the room to exercise its discretion in determining whether the agency's efforts are sufficient to satisfy the mandates of ICWA and related California law. True, in some cases, as in this one, the agency's efforts will fall so short of the mark that the evidence is patently insufficient to support the court's determination and it abuses its discretion in finding the agency's inquiry was proper, adequate, and discharged with due diligence. But the necessity of reversing in those situations is "a far cry from holding any misstep by the [agency] in the process of investigating a child's possible Indian status will require reversal of a no-ICWA finding." (*Rylei S., supra*, 81 Cal.App.5th at p. 325, fn. omitted.)

Resolution of the issue in a given case is necessarily fact-specific, but reasonableness, viewed through the lens of ICWA's purpose, is the touchstone. The

23.

agency's inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered. As the agency's inquiry is often the only opportunity to collect such information, it is a critical step in safeguarding the rights ICWA was designed to protect and one that cannot be excused by reviewing courts. (See *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 512 ["Statutes should be interpreted to be 'consistent with legislative purpose and not evasive thereof.'"]; *In re M.M.* (2022) 81 Cal.App.5th 61, 72–74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.) [recognizing widespread, problematic pattern of agencies repeatedly failing to obey the Legislature's statutory commands and reviewing courts countenancing this failure to follow the law].)

Where a juvenile court's finding that ICWA does not apply is challenged on appeal, it is difficult to envision a successful claim premised on the agency's failure to question a second cousin or a family friend, if the agency inquired of a child's closer maternal and paternal relatives on both sides, those relatives provided no information suggesting possible Indian ancestry, and the agency documented its efforts in the record for the juvenile court's review. In other cases, in contrast, second cousins or family friends may be the only individuals available to ask. A different situation yet is presented if there is no one beyond the parents to ask because they refused to provide any information and the agency exercised due diligence but was unable to identify and locate anyone else to ask, or if a relative was specifically identified as having information on the subject but the agency neglected that lead.

However, as the recent surge of cases reflects, following changes to California law over the past few years, the agency's discharge of its duties to inquire and document under section 224.2, subdivision (b), and rule 5.481(a)(5), is often so lacking that the juvenile court is left with little or nothing to work with; there is no evidence in the record and, therefore, nothing upon which to base a sound exercise of discretion. The degree of error committed by the agency will necessarily bear on the juvenile court's determination

under the statute, but avoiding conflation of the separate duties of the agency and the court, and any claimed errors, is important. The duty of inquiry under section 224.2, subdivision (b), is so broad that it will not be difficult for an appellant to find *some* deficiency to point to, but this does not necessarily translate into error by the juvenile court. So long as the agency supplies the requisite information, the juvenile court is well positioned to make any necessary weight and credibility determinations, and to guard against potential manipulation by participants where that is a factor. (*S.H., supra*, 82 Cal.App.5th at p. 172 [alleged father failed to disconnect from call to social worker's voicemail and inadvertently left a recorded message of himself and the mother discussing plan to claim Indian ancestry to delay child's removal from home].)

**D.     Conclusion**

In this case, the Department's inquiry extended no further than K.H.'s parents, both of whom were in the throes of serious drug addiction that may or may not have affected the accuracy of their reporting, and Father expressed uncertainty about any Indian ancestry, although he answered the court's more specific questions about ancestry or enrollment in the negative. On this record, the inquiry fell well short of complying with the plain language of section 224.2, subdivision (b), which the Department does not dispute. The outcome may have been different if K.H. had no other relatives or the Department could not locate any of his other relatives, and that information was documented in the record. However, beyond Mother's and Father's testimony and ICWA forms, there is no evidence on the issue of ICWA, which left the juvenile court without a sufficient factual basis upon which to exercise its discretion. As a direct result, the juvenile court's finding of "proper and adequate further inquiry and due diligence" is not supported by substantial evidence and the court's contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

Before turning to prejudice, we again emphasize that not all inadequacies with the agency's inquiry will result in error requiring reversal. If a reviewing court finds that the

juvenile court's ICWA finding is supported by substantial evidence, it did not abuse its discretion in finding a "proper and adequate further inquiry and due diligence" (§ 224.2, subd. (i)(2)), and it did not otherwise commit an error of law, the inquiry ends. However, claims of error must be evaluated in view of the remedial purpose underlying ICWA and California law. Until and unless agencies and juvenile courts move beyond inquiries that are merely perfunctory, lack documentation in the record, and are divorced from larger context, the problem of error in the form of undeveloped records necessitating reversal for correction will remain.

As explained next, this reversal for correction does not follow from any implied or express determination that error under ICWA is prejudicial per se or structural. The result is compelled by the unique circumstances of ICWA, under which the error and the prejudice are closely related. Consistent with the reasoning of *A.R.*, the relevant injury is not the denial of a merits-based outcome concerning whether the child is an Indian child, or whether there is reason to believe the child is or may be an Indian child, amenable to measurement by a likelihood-of-success condition. (*A.R., supra*, 11 Cal.5th at p. 252; see *Ezequiel G., supra*, 81 Cal.App.5th at p. 1020 (dis. opn. of Lavin, J. ["T]he purpose of the initial inquiry is not to enable courts or child protective agencies to determine at the outset of a dependency proceeding whether a child has a tribal affiliation."].) The relevant injury is the failure to gather the information necessary to make those determinations in the first instance, and it is this gathering of information which serves to ensure that the rights of tribes are protected as envisioned by ICWA and related California law. *(A.R., supra*, at pp. 252–254.)

## III. Assessing Juvenile Court's ICWA Error For Prejudice

### A. Miscarriage of Justice Requirement

Where, as here, the deficiency lies with an agency's duty of initial inquiry and a juvenile court's related finding of "proper and adequate further inquiry and due diligence" (§ 224.2, subd. (i)(2)), the error is one of state law (*Benjamin M., supra*, 70

Cal.App.5th at p. 742). Under the California Constitution, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

"[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice" (*In re Richard E.* (1978) 21 Cal.3d 349, 354; accord, *People v. Johnson* (2022) 12 Cal.5th 544, 605–606; *In re S.O.* (2020) 48 Cal.App.5th 781, 786–787; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 780; *In re N.V.* (2010) 189 Cal.App.4th 25, 31), and California law generally interprets its constitutional miscarriage of justice requirement "as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error" (*In re Celine R.* (2003) 31 Cal.4th 45, 60, citing *Watson, supra*, 46 Cal.2d at p. 836; accord, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073 (*Christopher L.*); *A.R., supra*, 11 Cal.5th at p. 252). "'"'[A] "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.'"'" (*People v. Hendrix* (2022) 13 Cal.5th 933, 944, quoting *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.)

Some errors, deemed structural, defy harmless error analysis (*Christopher L., supra*, 12 Cal.5th at p. 1073), but we do not believe errors with the inquiry under ICWA are among them (see *Dezi C., supra*, 79 Cal.App.5th at p. 777, review granted ["The rule at one end of th[e] continuum is one that mandates reversal: If the [agency's] initial inquiry is deficient, that defect necessarily infects the juvenile court's ICWA finding and

reversal is automatic and required (the 'automatic reversal rule')."]).**13**  Instead, we believe the analysis by the California Supreme Court in *A.R.* supplies the proper framework for analyzing prejudice in this context.  (*A.R., supra*, 11 Cal.5th at pp. 252–254.)

### B.      *A.R.*'s Injury-focused Rather Than Outcome-focused Inquiry

"ICWA compliance presents a unique situation .…"  (*In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, *N.G., supra*, 27 Cal.App.5th at p. 483.)  As previously stated, "[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings" *(N.G., supra*, at p. 484, citing *In re K.R., supra*, at p. 708), and an adequate initial inquiry facilitates the information gathering

---

**13**      Structural errors, when present, are not subject to harmless error review (*McCoy v. Louisiana* (2018) __ U.S. __, __ [138 S.Ct. 1500, 1511]), because the error "'affect[s] the framework within which the trial proceeds,' as distinguished from a lapse or flaw that is 'simply an error in the trial process itself'" (*ibid.*, quoting *Arizona v. Fulminante* (1991) 499 U.S. 279, 310).  In *Christopher L.*, the California Supreme Court recognized that "not all errors are amenable to harmless error analysis" (*Christopher L., supra*, 12 Cal.5th at p. 1073), and the court has not foreclosed application of structural error in dependency cases (*id.* at pp. 1075, 1083).  However, the court "'question[ed] whether the structural error doctrine that has been established for certain errors in criminal proceedings should be imported wholesale, or unthinkingly, into the quite different context of dependency cases'" (*id.* at p. 1075, quoting *In re James F.* (2008) 42 Cal.4th 901, 915–916), reasoning that "in the dependency context, automatic reversal for errors that do not invariably lead to fundamental unfairness would exact a particularly steep cost.  'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.'  [Citation.]  'We emphatically agree that dependent children have a critical interest in avoiding unnecessary delays to their long-term placement.'  [Citations.]  And we have repeatedly underscored the need to avoid delay in this context" (*Christopher L., supra*, at p. 1081).

Errors under ICWA are not monolithic.  Where in the ICWA compliance process the error lies, the degree of defect, and state of the record require a case-specific examination, but "'[i]n general, harmless error analysis applies in juvenile dependency proceedings'" (*In re M.R.* (2020) 48 Cal.App.5th 412, 429, quoting *In re M.S.* (2019) 41 Cal.App.5th 568, 590; accord, *In re Celine R., supra*, 31 Cal.4th at p. 60), and we see no reason why an error with the discharge of the agency's or juvenile court's duties under ICWA defies harmless error analysis.

28.

upon which the court's ICWA determination will rest. However, while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA (*J.C., supra*, 77 Cal.App.5th at p. 83; accord, *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1078; *In re Michael V., supra*, 3 Cal.App.5th at p. 233), and parents may raise the claim of error for the first time on appeal (*Isaiah W., supra*, 1 Cal.5th at p. 13; accord, *In re A.W.* (2019) 38 Cal.App.5th 655, 665; *N.G., supra*, at p. 483; *In re K.R., supra*, at p. 708).

In *A.R.*, our high court recognized that although *Watson* sets forth the test that generally applies to the prejudice inquiry under state law (*A.R., supra*, 11 Cal.5th at p. 252), not every error is of the type that lends itself to resolution under a likelihood-of-success test (*id.* at pp. 252–253). The claim of error in *A.R.*, like the error here, evaded a straightforward application of *Watson*. (*A.R., supra*, at p. 254.) Trial counsel failed to file a timely appeal on behalf of the mother following the termination of her parental rights. (*Id.* at p. 252.) On review, the agency argued that to show prejudicial error, the "parent must demonstrate that there is a reasonable probability she would have prevailed on appeal if the notice of appeal had been timely filed." (*Ibid.*) The court declined to apply an outcome-focused "likelihood-of-success condition," explaining that "[f]or a parent whose attorney has incompetently failed to file a timely appeal, the relevant injury is not denial of any specific substantive appellate victory; *it is the opportunity to appeal at all*." (*Ibid.*, italics added.) Therefore, the "focus [is] on whether the parent would have taken a timely appeal, without requiring the parent to shoulder the further burden of demonstrating the appeal was likely to be successful." (*Id.* at pp. 252–253.) The court concluded that "[w]here … a parent's failure to file a timely notice of appeal is the result of counsel's error, reinstating an otherwise-defaulted appeal is generally the only meaningful way to safeguard the statutory right to competent representation." (*Id.* at p. 254.)

Thus, *A.R.* recognized that while we *generally* apply a *Watson* likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not *always* appropriate because it cannot always adequately measure the relevant harm. (*A.R., supra*, 11 Cal.5th at pp. 252–253.) In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect. (*Id.* at p. 252.)

ICWA is not directed at reaching, or protecting, a specific outcome on the merits. As we have stated, "'it typically is not self-evident whether a child is an Indian child'" (*Ricky R., supra*, 82 Cal.App.5th at p. 678, quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 741), and "the question of membership is determined by the tribes, not the courts or child protective agencies" (*T.G., supra*, 58 Cal.5th at p. 294; accord, *Rylei S., supra*, 81 Cal.App.5th at p. 321, fn. 8). "The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights 'where the court knows or has reason to know that an Indian child is involved.'" (*Isaiah W., supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) ICWA's notice requirement "facilitate[s] a determination of whether the child is an Indian child under ICWA," and "ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Isaiah W., supra*, at p. 8.)

Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously. Informed by the reasoning in *A.R.*, for the purpose of assessing prejudice, the focus is on the missed opportunity to uncover relevant information necessary to make a reliable, informed determination concerning whether the child is or may be an Indian child. (*A.R., supra*, 11 Cal.5th at p. 252; see *E.V., supra*, 80

30.

Cal.App.5th at p. 697.) An adequate inquiry at the first step is critical to this determination and requiring adequacy as the law directs "is generally the only meaningfully way to safeguard the statutory right[s]" as intended under ICWA and related California law (*A.R., supra*, at p. 254). If this step is disregarded, the protection Congress and our state Legislature intended to afford tribes goes unrealized.

We recognize that "'dependent children have a critical interest in avoiding unnecessary delays to their long-term placement'" (*Christopher L., supra*, 12 Cal.5th at p. 1081, quoting *A.R., supra*, 11 Cal.5th at p. 249), and "swift and early resolution of ICWA notice issues is ideal" (*Isaiah W., supra*, 1 Cal.5th at p. 12). However, it is clear under the law that "Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children." (*Isaiah W., supra*, at p. 13, citing *Holyfield, supra*, 490 U.S. at p. 49; accord, *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 ["[W]e are tasked with important, but competing legislative mandates. Prejudice must be viewed through this multifaceted legislative prism."].) "'[T]he tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending'" (*Isaiah W., supra*, at pp. 13–14), and the law "recognize[s] the importance of properly determining a child's Indian status, even when a dependency proceeding has progressed beyond the initial stages" (*id.* at p. 12), and "'despite the parents' inaction'" (*id.* at p. 13). Misplacing the relevant measure or erecting the bar too high in the context of ICWA has the effect of shielding state agencies and courts from the consequence of delinquency in complying with ICWA's basic mandates at the first step, at the expense of tribal rights and in perpetuation of the evils Congress and the Legislature identified and intended to remedy. (See *E.V., supra*, 80 Cal.App.5th at p. 698 ["'[T]he correct approach is to focus on the wider interest at play— i.e., the federal and state public policy of ensuring that potential Native American heritage is considered, and thus inquired about, in every dependency case.'"].)

31.

As we have explained, the inquiry at the first step need not be exhaustive, as the goal is simply to ensure a reasonable inquiry sufficient to safeguard the rights ICWA was designed to protect. In the unique context of ICWA, the error claimed by Father prejudices the rights of a different stakeholder and the prejudice does not relate to a substantive outcome on the merits that may be measured by *Watson*'s likelihood-of-success test. (*A.R., supra*, 11 Cal.5th at p. 252.) Instead, where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard. (*Id.* at pp. 252–254.)

We believe that the result we have reached is compelled by ICWA and California law, and we are also mindful that the California Supreme Court has cautioned "appellate courts should be wary of finding harmless error '[w]hen a counterfactual inquiry appears too difficult to responsibly undertake, or a counterfactual conclusion relies on inferences that really amount to guesswork.'" (*Christopher L., supra*, 12 Cal.5th at p. 1082, quoting *In re J.P.* (2017) 15 Cal.App.5th 789, 804 (conc. opn. of Baker, J.).) Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation. This is aptly illustrated by the Court of Appeal in *J.C.*: "By failing to conduct an adequate inquiry, the [agency] virtually guarantees that the (incomplete) information it obtains will support a finding ICWA does not apply and that the juvenile court's error in failing to require the [agency] to comply with the law is harmless." (*J.C., supra*, 77 Cal.App.5th at p. 80.) "[T]he *less* [an agency] complies with its duties to inquire under state and federal law, the *more* harmless is its erroneous failure to inquire." (*Ibid.*, italics added.) Such an approach is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.

We believe the foregoing analysis applies when assessing ICWA errors for prejudice. However, we recognize there are presently a number of other approaches on

this issue, and a few appellate courts have articulated tests or rules to apply. The issue has been taken up and will be resolved by the California Supreme Court in due course, but in the interim, we briefly address the other approaches before reaching our conclusion in part IV of the Discussion.

### C. Summary of Other Approaches for Assessing Prejudice

#### 1. More Favorable Result Always Reasonably Probable

One application of *Watson*'s harmless error rule considered but rejected by courts recognizes that "it is *always* reasonably probable that a result more favorable to the appellant might be revealed by additional information," and, therefore, "reversal [is required] in all cases where the agency erred." (*Benjamin M., supra*, 70 Cal.App.5th at p. 743 [considering but rejecting option].) This sets the bar so low as to render the concept of harmless error meaningless. Deeming an error prejudicial requires more than an abstract possibility that there is additional information to uncover. (*People v. Hendrix, supra*, 13 Cal.5th at p. 944.) Under the analysis we believe applies, the initial inquiry need only be reasonable and sufficient in scope to adequately safeguard the relevant rights, but once that goal is accomplished, reversal is not required simply because there are additional individuals who could have been or might be questioned. The list of potential people to question may be quite lengthy in any given case, and "the evidence already uncovered in the initial inquiry [may be] sufficient for a reliable determination." (*Benjamin M., supra*, at p. 743, citing *In re J.M.* (2012) 206 Cal.App.4th 375, 382.)

#### 2. Presumptive Affirmance Unless Appellant Demonstrates Harm

At the other end of a conceptual spectrum from the foregoing is the presumptive affirmance approach, which provides that "'[a]ny failure to comply with a higher state standard, above and beyond what … ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error.'" (*A.C., supra*, 65 Cal.App.5th at p. 1069; accord, *In re G.A.* (2022) 81 Cal.App.5th 355, 363, review granted Oct. 12, 2022,

S276056.)  "This means a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry." (*A.C., supra*, at p. 1069).  "'Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of justice has not been established and reversal is not required.'" (*Ibid.*)

This approach has been sharply criticized.  (E.g., *In re Y.M.* (2022) 82 Cal.App.5th 901, 913–915 (*Y.M.*); *Dezi C., supra*, 79 Cal.App.5th at pp. 777–778, review granted; *Benjamin M., supra*, 70 Cal.App.5th at pp. 743–744; *A.C., supra*, 65 Cal.App.5th at pp. 1074–1078 (dis. opn. of Menetrez, J.).)  As the appellate court observed in *Y.M.*, while this "standard generally conforms to our state constitutional requirement for a miscarriage of justice" (*Y.M., supra*, at p. 913), it suffers from three main shortcomings (*id.* at pp. 913–915).  First, "'[a]lthough appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and rule 23 of the California Rules of Court, the authority should be exercised sparingly,'" and "'[a]bsent exceptional circumstances, no such findings should be made.'" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted (*Zeth S.*).)[14]  This principle applies to juvenile dependency appeals as well (*Zeth S., supra*, at p. 405.), and while there are exceptions, such as in the context of a motion to dismiss an appeal as moot (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676), claims of error under ICWA are not rare and will not typically present the type of exceptional circumstances warranting deviation from the general rule (*Y.M., supra*, at p. 913).  Routinely requiring an appealing parent to affirmatively demonstrate prejudice through the submission of evidence, and authorizing the reviewing court to consider it, invites "the [very] deviat[ion] from settled rules on appeal" disapproved of in *Zeth S.*  (*Zeth S., supra*, at pp. 405–406; accord, *Y.M., supra*, at p. 913.)  Notably, one of the cases *Zeth S.*

---

[14]    Under current rules, rule 8.252 provides that "[a] party may move that the reviewing court make findings under Code of Civil Procedure section 909," and "may move that the reviewing court take evidence."  (Rule 8.252(b), (c)(1).)

disapproved was *In re Jonathan M.*, in which the Court of Appeal had stated, "'This court *routinely* accepts evidence per Code of Civil Procedure section 909 in juvenile dependency cases to expedite just and final resolution for the benefit of the children involved.'" (*Zeth S., supra*, p. 408, quoting *In re Jonathan M.* (1997) 53 Cal.App.4th 1234, 1236, fn. 2.)

This approach also "'unreasonabl[y] … require[s] a parent to make an affirmative representation of Indian ancestry where the [agency's] failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim.'" (*Y.M., supra*, at 82 Cal.App.5th at p. 914, quoting *Y.W.* (2021) 70 Cal.App.5th 542, 556 (*Y.W.*).) "'[I]n any case where information about Indian ancestry is unknown, the probability of such ancestry is reasonable enough to require the agency and court to pursue it. Requiring a parent to prove that the missing information would have demonstrated "reason to believe" would effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency. A parent challenging ICWA compliance cannot always easily obtain the missing information, even when that missing information is about a parent's possible Indian ancestry.'" (*Y.M., supra*, at p. 914, quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 743, fn. omitted.) Additionally, while a parent may or may not be in possession of information about Indian ancestry, we also cannot assume a parent's interest necessarily aligns with the tribe's interest. (*In re G.H.* (Oct. 6, 2022, G061166) __ Cal.App.5th __, __ [2022 Cal.App. Lexis 842, *18].) By virtue of being haled into court for a dependency proceeding, the parent is facing challenges that have interfered with the parent's ability to provide a stable, safe home for the child, and in any given case, the parent may have an interest adverse to that of the tribe. (*Id.* at p. __ [2022 Cal.App. Lexis 842, *18] [parents may be uninterested in or uncommitted to protecting tribal interests]; *In re J.W.* (2022) 81 Cal.App.5th 384, 393 (dis. opn. of Wiley, J. [protection of "tribal interest cannot turn on whether [a relative] has an active

35.

interest in making tribal contact"; it is speculative "[t]o forecast … attitude about a tribal heritage"].)

Finally, there are the Indian tribes, which may have an interest but no notice of the proceedings. (*Y.M., supra*, 82 Cal.App.5th at p. 914, citing *Holyfield, supra*, 490 U.S. at p. 52.) As discussed, "'[t]he right at issue in the ICWA context is as much an *Indian tribe's* right to "a determination" of a child's Indian status as it is a right of any sort of favorable outcome for the litigants already in a dependency case.' (*Benjamin M., supra*, 70 Cal.App.5th at p. 743.) Therefore, to require a parent to prove on appeal there likely would have been more favorable outcome absent the error (i.e., that there is reason to believe a child may have Indian ancestry) would frustrate the ICWA federal and state statutory scheme. (*Id.* at pp. 743–744.) '[T]he presumptive affirmance rule not only embraces finality at the expense of the tribe's interest in ascertaining accurate determinations of the Indian status of dependent children, but does too little to incentivize agencies to conduct proper inquiries because prejudicially deficient [inquiries] will go uncorrected if the parent is unwilling or unable to make a meaningful proffer on appeal.' (*Dezi C., supra*, 79 Cal.App.5th at p. 785[, review granted].)" (*Y.M., supra*, at pp. 914–915.)

### 3. *Dezi C.*: "Reason to Believe" Rule

Occupying a middle ground are two additional approaches. Beginning first with *Dezi C.*, the Court of Appeal recently endorsed a rule that provides "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Dezi C., supra*, 79 Cal.App.5th at p. 779, review granted; accord, *Ezequiel G., supra*, 81 Cal.App.5th at p. 1014 [adopting *Dezi C.* rule].) Under *Dezi C.*, "the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal."

(*Dezi C., supra*, at p. 779, fn. omitted.) The court expressed the view that "[c]onsidering such proffers in this context is appropriate under Code of Civil Procedure section 909 because they bear on the collateral issue of prejudice rather than the substantive merits and because they expedite the proceedings and promote finality of the juvenile court's orders." (*Ibid.,* fn. 4.)

In the preceding subsection, we addressed what we consider to be a prohibition against routinely accepting proffers of evidence, postjudgment. Although *Dezi C.* rejects the presumptive affirmance rule exemplified by *A.C., supra*, 65 Cal.App.5th at page 1065, it nevertheless relies on *A.C.* as support for using Code of Civil Procedure section 909 to take evidence on review. (*Dezi C., supra*, 79 Cal.App.5th at pp. 779, fn. 4, 785, review granted). *A.C.*, however, employed that procedure *because* it was placing the burden on the appealing party to demonstrate prejudice. (*A.C., supra*, 65 Cal.App.5th at pp. 1070–1071.) For this reason, we agree with *Y.M.* that there is little practical difference between the presumptive affirmance rule approved of by *A.C.* and the "reason to believe" approach in *Dezi C.* (*Y.M., supra*, 82 Cal.App.5th at p. 915 [describing *Dezi C.*'s approach as modified presumptive affirmance].) We are also unpersuaded that postjudgment evidence may be fairly characterized as bearing on a collateral issue when it directly relates to the merits of the claim challenging the agency's inquiry and the juvenile court's ICWA finding. (*Y.M., supra*, at pp. 914–915.)

Next, *Dezi C.* explained that its approach is intended to best "weave[] together the test for harmless error compelled by our state's Constitution with the cascading duties of inquiry imposed upon agencies by our state's ICWA statutes" (*Dezi C., supra*, 79 Cal.App.5th at p. 779, fn. omitted, review granted), "reconcile[] the competing policies at issue when an ICWA objection is asserted in later at the final phases of the dependency proceedings" (*id.* at p. 781), and "by focusing on what is in the record rather than what is not in the record, largely sidestep[] the 'how can we know what we don't know' and burden of proof conundrums that animate the automatic reversal and presumptive

affirmance rules" (*id.* at p. 782). In the court's view, "[b]y limiting a remand for further inquiry to those cases in which the record gives the reviewing court a reason to believe that the remand may undermine the juvenile court's ICWA finding, the 'reason to believe' rule effectuates the rights of the tribes *in those instances in which those rights are most likely at risk*, which are precisely the cases in which the tribe's potential rights do justify placing the children in a further period of limbo." (*Id.* at pp. 781–782, italics added.)

By design, this approach bypasses problems with the agency's and the court's discharge of their duties where the deficiencies lie in the failure to gather information at the initial stage of inquiry. (§ 224.2, subds. (b), (i)(2).) Instead, the rule focuses on information relevant to the next stage in the ICWA compliance process—a need for further inquiry *if*, based on the record, there is reason to believe the child is an Indian child (§ 224.2, subd. (e)), and on prejudice as related to the court's ICWA finding (*id.*, subd. (i)(2)). However, as recent cases demonstrate, following changes in California law over the past few years, errors in the ICWA compliance process very often lie in the lack of an adequate inquiry at the outset and, as we have explained, ensuring adequacy at the outset is essential to ensuring that the protection afforded by ICWA and related law is realized. In most dependency cases, the children will not be found to be Indian children, but that determination rests exclusively with the tribes and absent a reasonable inquiry at the outset, the opportunity to gather information relevant to the inquiry is often missed entirely.

As we have discussed, Congress determined that past wrongs involving Indian children and tribes, perpetuated in part by child welfare agencies and state courts, were serious enough and pervasive enough to require remedial legislation. Our state Legislature subsequently sought to increase compliance with ICWA in 2006 through the enactment of Senate Bill No. 678 (2005–2006 Reg. Sess.) (*W.B., supra*, 55 Cal.4th at p. 52), and in 2018, Assembly Bill No. 3176 (2017–2018 Reg. Sess.) expressly expanded

the scope of the agency's duty of initial inquiry. More recently, rule 5.481(a)(5) was amended to require documentation.

Thus, the legislative mandate is clear (*In re M.M., supra*, 81 Cal.App.5th at p. 73, review granted (dis. opn. of Wiley, J.)), and neither a calculation of odds the child is or may be an Indian child nor a child's separately held interest in finality, as critical as the latter is, may be used to shield the agency and juvenile court from the consequences of the failure to comply with the law by ensuring an adequate inquiry in the first instance. Such an approach frustrates the purpose of ICWA by undermining the specific protections Congress and our state Legislature deemed necessary to safeguard the rights at issue. It is also at odds with *Isaiah W.*, which recognizes that tribes hold separate and important rights under ICWA that cannot be disregarded (*Isaiah W., supra*, 1 Cal.5th at pp. 12–14), and with *A.R.*, which recognizes that a merits-based likelihood-of-success test is not the appropriate measure in circumstances such as this, where the relevant injury is not related to a specific substantive outcome on the merits (*A.R., supra*, 11 Cal.5th at pp. 252–253).

### 4. *Benjamin M.*: Readily Obtainable Information Likely to Bear Meaningfully on Inquiry

The court in *Benjamin M.* also selected a middle ground approach. (*Benjamin M., supra*, 70 Cal.App.5th at p. 744.) The court first considered but rejected possible approaches of always reversing under *Watson* and presumptive affirmance, previously discussed. (*Benjamin M., supra* at pp. 743–744.) The court concluded that "in ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) "Under this approach, … continued inquiry [is required] where the probability of obtaining meaningful information is reasonable in the context of ICWA." (*Ibid.*)

Some criticism followed based on the court's failure to specifically address the state's constitutional test for prejudice and for its focus on "readily obtainable information." (*Benjamin M., supra*, 77 Cal.App.5th at p. 744.) One Court of Appeal pointed out that "neither the agency's obligation to make the ICWA inquiry, nor the constitutional 'manifest miscarriage of justice' standard are dependent upon the ease of compliance." (*In re A.R.* (2022) 77 Cal.App.5th 197, 206.) The Court of Appeal in *Dezi C.* also criticized the approach, stating, "Because this rule focuses on the ease of obtaining information that bears on the question of a child's Indian status rather than whether that information is likely to affect the juvenile court's ICWA finding, this rule lacks the *outcome* focus that is the hallmark of usual harmlessness review." (*Dezi C., supra*, 79 Cal.App.5th at p. 785, review granted.) Further, it "appears to be so flexible and malleable that some courts … have argued that it functions as a type of automatic reversal rule." (*Id.* at p. 786.)

The approach is potentially susceptible to being read in different ways, depending on whether courts interpret it broadly or narrowly overall, and depending on how they interpret "readily obtainable information" and "likely to bear meaningfully" on the inquiry more specifically. (*Benjamin M., supra*, 70 Cal.App.5th at p. 744; see *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 (*Antonio R.*) [disagreeing with how courts applied *Benjamin M.* approach in *In re S.S.* (2022) 75 Cal.App.5th 575 & *In re Darian R.* (2022) 75 Cal.App.5th 502].) Notably, *Benjamin M.* was one of the first cases to address these issues under the law as it presently stands and, therefore, its middle ground approach was necessarily formed without the benefit of the more recent decisions shaping the law in this area. Nevertheless, the court recognized that until an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal. (*Benjamin M., supra*, at pp. 742–743.) The court also recognized the requirement under California law that reversal requires a showing of

prejudice (*id.* at p. 742), and it intended its approach be consistent with caselaw, which generally avoided broad, rigid rules of reversal (*id.* at p. 744).

We agree with these considerations in general, and the questions posed by the *Benjamin M.* approach may be useful in evaluating a claim of prejudicial error because what information is or is not present in the record and whether it does or would bear meaningfully on the inquiry are considerations relevant both in the juvenile court and on review. We anticipate further clarification from the California Supreme Court on this issue, but until then, we decline to adopt *Benjamin M.* as a mechanical test or rule given its lack of a more precise articulation of prejudice and potential for misapplication, depending on how the decision is interpreted by other courts. Critically, while our view aligns with *Benjamin M.*'s view on a number of relevant legal principles, the decision does not explain the basis for its finding of prejudice in any detail, and we believe that the reasoning in *A.R.*, which is injury-focused rather than outcome-focused, should be applied to the assessment of prejudice in the context of ICWA. (*A.R., supra*, 11 Cal.5th at pp. 252–254.)

**5.    "Clear Rule of Reversal" Applies to An Undeveloped Record**

Finally, there is a line of cases that has been characterized as holding that error with the initial inquiry is, for all practical purposes, reversible per se. (E.g., *In re G.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 842, *21] [following "'clear rule that requires reversal'"]; *E.V., supra*, 80 Cal.App.5th at p. 698 ["clear rule of reversal"]; *In re A.R., supra*, 77 Cal.App.5th at p. 207 [reversal required where ICWA requirements ignored]; *J.C., supra*, 77 Cal.App.5th at p. 80 [inadequate inquiry, making it impossible for parent to show prejudice, requires reversal; *Antonio R., supra*, 76 Cal.App.5th at p. 435 [inadequate inquiry usually prejudicial and reversible]; *Y.W., supra*, 70 Cal.App.5th at p. 556 [inadequate inquiry makes it impossible to show prejudice]; see *Y.M., supra*, 82 Cal.App.5th at pp. 911–912 & fn. 6 [*E.V., In re A.R., J.C.,* and *Y.W.* among cases adopting a reversible per se standard]; *Dezi C., supra*, 79 Cal.App.5th at

p. 777, review granted [cases applying automatic reversal rule include *J.C.*, *Antonio R.*, *In re A.R.*, and *Y.W.*].)  We believe this characterization overstates the holdings in these cases, however, because they involve records so undeveloped that the inadequacy of the inquiry is readily apparent and there simply is no basis on which to find substantial evidence would support a contrary conclusion.  Consequently, there also is no basis on which the court could exercise discretion to approve the patently inadequate inquiry and record.  Under these circumstances, it is perhaps fair to say that the error and need for reversal are "clear."  (*E.V.*, *supra*, 80 Cal.App.5th at p. 698.)  We caution against characterizing these cases as generally establishing a *reversible per se* rule, though, because not all records will be as undeveloped and not all errors will be as patent as in these cases.

To the contrary, there will be varying degrees of record development and error, and the scope of the court's discretion will vary accordingly, as we have explained.  Even courts following the "clear rule" recognize that not all errors in the initial inquiry stage will be prejudicial.  (*E.V.*, *supra*, 80 Cal.App.5th at pp. 698–700 [multiple errors by agency and court]; *In re A.R.*, *supra*, 77 Cal.App.5th at p. 203 [no inquiry conducted at all].)  On the whole, these cases recognize the basic proposition that, in most circumstances where there is a patent lack of compliance with the law that results in an obviously deficient record, there is error and the error is prejudicial.  To this extent, although these cases do not rely upon the California Supreme Court's decision in *A.R.* or detail the underpinnings of their prejudice analysis, their dispositions nevertheless appear consistent with *A.R.*'s reasoning.  (*A.R.*, *supra*, 11 Cal.5th at pp. 252–254.)

## IV.    Conclusion and Necessity of Ensuring Adequate Inquiry on Remand

In sum, the concepts of error, the court's abuse of its discretion in finding ICWA does not apply, and prejudice are easily conflated in this context because they are closely related.  For this reason, a clearer delineation of the analytical steps is important.  The agency and the court must ensure an adequate, proper, and duly diligent inquiry, with

42.

record documentation.  If that duty is fulfilled, there will be a record containing evidence upon which the court may exercise its discretion in determining the inquiry was or was not reasonable under the applicable laws and rules.  Not every defect in the agency's inquiry will be problematic, as the inquiry need not be perfect or exhaustive, but so long as the record is adequately developed, reviewing courts are better able to assess any assertion of prejudicial error.

We appreciate the burden child welfare agencies and juvenile courts are laboring under, but we do not believe that requiring agencies and juvenile courts to ensure fulfillment of the most basic duties of inquiry required under ICWA adds measurably to that burden.  The law already requires agencies to identify and locate numerous relatives of the child, as was done in this case (§ 309, subd. (e)), and agencies are often at least in touch by telephone with some relatives during the course of dependency proceedings, also as in this case.  By far, the least burdensome option is simply to ensure that an adequate initial inquiry is made of maternal relatives on both sides where available and paternal relatives on both sides where available, and that the inquiry and its results are documented in the record, as required by California law.  (§ 224.2, subd. (b); rule 5.481(a)(5).)  This will supply evidence upon which the juvenile court may exercise sound discretion in determining there has been "proper and adequate further inquiry and due diligence."  (§ 224.2, subd. (i)(2).)

The failure to discharge these duties in the first instance comes at the expense of the rights ICWA was specifically designed to protect, and it ultimately increases the administrative burden on agencies and courts by necessitating a further expenditure of resources at a juncture when, in many cases, those duties will be more difficult to discharge due to the passage of time and, quite possibly, a lapse in cooperation.  Further, in addition to disregarding the relevant stakeholders' rights, "the failure to conduct any inquiry at all … leaves a case vulnerable to collateral attack in the event Native American heritage is later discovered.  While the likelihood of such an attack may be minimal, in

any one case, the very possibility would be devastating to the concepts of finality and permanency." (*In re A.R., supra*, 77 Cal.App.5th at p. 208; accord, *In re G.H., supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 842, *15–16].)

We recognize the frustration with the sheer volume of cases suffering from this fundamental defect given that the vast majority of inquiries will not result in a finding that a child is or may be an Indian child.[15] However, "[t]he judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function." (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53.) Agencies and lower courts are, by now, on very clear notice of the problems caused when little to no inquiry is made. While we are not persuaded that compliance with section 224.2 will prove onerous once agencies provide a record of their efforts for the juvenile court to review, we may not interpret the law to relieve either one of the burden of complying with the plain directives of the statute.

Finally, we note that many cases, including *Benjamin M.*, focus on the specific deficiency identified by the appellant. This is understandable given the unsettled nature of the law, the amorphous nature of the inquiry, and the high stakes in a dependency case, but in determining whether an error at the initial stage of inquiry is prejudicial and requires reversal, courts must take care to assess the inquiry as a whole for adequacy.

---

[15] We also recognize that within tribes, determining membership or eligibility for membership may be a challenging and fraught process given the inquiry is political. (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 71–72 & fn. 32 ["A tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community."]; *In re Austin J.* (2020) 47 Cal.App.5th 870, 882 ["Being an 'Indian child' is … not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.'"].) This reality underscores how ill-suited agencies and courts are to engage in any calculation of odds in the matter, particularly in the absence of a proper, adequate, and duly diligent inquiry. (*T.G., supra*, 58 Cal.App.5th at p. 294.)

The failure to follow up on a potential lead may, in view of the entire record, prove harmless. Conversely, a more glaring error identified by the appealing parent, such as a failure to follow up on the other parent's statement indicating possible Indian ancestry, may mask other less obvious but nevertheless critical failures, such as the failure to question anyone on the appellant's side of the family other than the appellant. Our high court did not express a view on second or successive appeals claiming ICWA error (*Isaiah W., supra*, 1 Cal.5th at p. 14), nor do we, but repeated appeals on this issue would be to the detriment of all and would come at an intolerably high cost to the child's interest in permanency and stability (*id.* at p. 12; accord, *Christopher L., supra*, 12 Cal.5th at p. 1081).

In the case at hand, the record reflects that the Department identified and located numerous maternal and paternal relatives, was in contact with grandparents E.C. and C.H. from the very outset, and either did not inquire of anyone beyond Mother and Father or did so but neglected to document the inquiries and responses received. (Rule 5.481(a)(5); see § 309, subd. (e).) While Mother and Father did not provide information suggesting K.H. is or may be an Indian child, the law demands more than merely inquiring of Mother and Father, as the Department readily concedes. (*Antonio R., supra*, 76 Cal.App.5th at p. 431; accord, *In re M.M., supra*, 81 Cal.App.5th at p. 74, review granted (dis. opn. of Wiley, J.).) The nature of this defect left the juvenile court with no evidence upon which to exercise discretion to find the inquiry proper, adequate, and duly diligent. As the principles articulated in *A.R.* illustrate, this error is necessarily prejudicial because, limited only to the parents, the inquiry fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law, and remand for correction is required. (*A.R., supra*, 11 Cal.5th at pp. 252–253.)

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed, and this matter is remanded. On remand, the juvenile court shall

direct the Department to conduct a proper, adequate, and duly diligent inquiry under section 224.2, subdivision (b), and document its inquiry in the record in compliance with rule 5.481(a)(5).  Inasmuch as the record reflects K.H. had available relatives on both sides of his maternal family and both sides of his paternal family, the inquiry should be of sufficient reach to ensure that if there is information suggesting K.H. is or may be an Indian child, it is gathered.  This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of K.H.  We leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the Department.  So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding.  (§ 224.2, subd. (i)(2).)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the Department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivision (b), and rule 5.481(a)(5).  If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, its ICWA finding

46.

shall be reinstated.  In all other respects, the court's orders terminating parental rights are affirmed.


                                                                    MEEHAN, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.